0

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSE GUADALUPE SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>Defendant. | Case No. CV 15-06532-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Jose Guadalupe Sanchez ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security disability benefits. The Court concludes that the ALJ did not err in considering the medical evidence of record or in evaluating Plaintiff's mental limitations. The ALJ's decision is therefore affirmed and the matter is dismissed with prejudice.

## I.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits on August 19, 2011, alleging disability beginning August 18, 2008. Administrative Record

("AR") 97, 186-92. After Plaintiff's application was denied, AR 105-10, he requested a hearing before an ALJ, AR 111-12. On April 30, 2013, Plaintiff, who was represented by counsel, appeared and testified at the hearing with the assistance of an interpreter. AR 39-75. The ALJ also called a vocational expert ("VE") to testify about Plaintiff's past relevant work. AR 46-48, 70-73. Although Plaintiff reported that he had worked as a machine-shop operator, AR 244-45, the VE testified that Plaintiff's past work was best characterized as riveting-machine operator, which was medium and skilled work as generally performed and heavy work as actually performed, AR 47-48. At the close of the hearing, the ALJ ordered an orthopedic evaluation and a psychological evaluation. AR 75. A supplemental hearing was held on January 7, 2014. AR 76-86. The same VE who testified at Plaintiff's first hearing was called to testify at the supplemental hearing. AR 81-85.

On March 21, 2014, the ALJ issued an unfavorable decision. AR 12-38. In reaching his decision, the ALJ found that Plaintiff had the following "severe combination of impairments": degenerative disc disease and spondylosis of the cervical spine; branch retinal vein occlusion of the left eye; hypertension; allergic rhinitis; "as of May 2012, depressive disorder"; and "as of April 2013, an anxiety disorder." AR 20-21. The ALJ determined that despite his impairments, Plaintiff had the residual functional capacity ("RFC") to perform medium work, "except he remains able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, push and/or pull with the upper extremities frequently, stand and/or walk for six hours, and sit for six hours, can frequently squat, stoop, kneel, crawl, climb, or bend, and can frequently walk on uneven terrain, climb ladders, and work at heights." AR 26. Based on the VE's testimony, the ALJ determined that Plaintiff was not disabled because he could perform his past relevant work as generally performed. AR 31. After the Appeals Council denied Plaintiff's request for review, AR 1-9, this action

2

followed.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) considering the opinion of the consultative examining orthopedist, Dr. Warren Yu; (2) failing to include mental limitations in the RFC and hypothetical questions to the VE; and (3) considering the opinion of internist Dr. Lana Geyber. See Joint Stipulation ("JS") at 3.

## III.

## DISCUSSION

**A.   The ALJ Properly Considered Dr. Yu's Opinion**

**1.   Background**

On July 13, 2013, Dr. Yu performed an orthopedic examination of Plaintiff and completed a narrative report explaining his findings. AR 610-16. In the report, Dr. Yu opined that Plaintiff could "frequently" bend, stoop, crawl, climb, balance, and kneel. AR 616. Dr. Yu also opined that Plaintiff could walk on uneven terrain, climb ladders, and work at heights. Id. Concurrent with his report, Dr. Yu completed a check-box Medical Source Statement indicating the same postural and agility limitations. AR 621, 623. Dr. Yu also checked the boxes indicating that Plaintiff could "frequently" tolerate exposure to unprotected heights; moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold and heat; and vibrations. AR 622.

Because Dr. Yu had not been provided with Plaintiff's medical records at the time of the initial examination, the ALJ ordered an additional examination. AR 73-75, 78-79, 740. On October 5, 2013, Dr. Yu reviewed Plaintiff records, including a "CT scan which does note of cervical spondylosis, mild, with previous EMG/Nerve conduction test that is normal,"

and examined Plaintiff a second time. AR 729. Dr. Yu prepared another narrative report containing the same "frequent" postural and agility limitations set forth in his original report. AR 729-33. However, in a Medical Source Statement completed that same day, Dr. Yu checked the boxes indicating that Plaintiff could perform those postural and agility limitations only "occasionally." AR 737. In addition, Dr. Yu checked the boxes indicating that Plaintiff could "occasionally" tolerate exposure to unprotected heights; moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold and heat; and vibrations. AR 738. These environmental limitations were not included in either of Dr. Yu's narrative reports.

At Plaintiff's second hearing, the ALJ had the following colloquy with Plaintiff's attorney regarding the discrepancies in Dr. Yu's reports:

> ALJ: . . . [T]he reason I scheduled the hearing is because I have some problems with the doctor's -- the medical source statement as compared to the narrative report. I mean, one of the reasons I have a problem with the environmental [limitations] is earlier the doctor -- before he had the medical records -- said that all the environmental limitations were frequent. And now he's saying occasional. And he still measured [Plaintiff's] visual acuity, and it's better in the redone CE report than it was in the first report.

> ATTY:     Yes, sir.

> ALJ: So I don't understand the environmental limitations and especially the environmental limitations in terms of dust, odors, fumes, and all of that. It looks to me like the doctor just went down the list and just checked "occasional" for all of that. But I wanted to give you a chance to ask the VE about that or for

4

me to ask the VE about that and see how that affects [Plaintiff's] past work.

        ATTY:     Very well.

        ALJ: But I do have -- and then in terms of this time around, the doctor in his narrative report said posturals are frequent, but in the medical source statement says occasional. So I always have -- I always run into problems with the medical source statement as compared to the narrative reports. So did you want to take additional testimony from [Plaintiff]?

        ATTY:     I don't believe so, judge.

AR 80-81.

In his decision, the ALJ declined to adopt Dr. Yu's October Medical Source Statement with respect to the postural and agility limitations "because it is inconsistent with the narrative report." AR 29. The ALJ also declined to adopt the environmental limitations because some were inconsistent with the narrative report and others were not reasonably related to any impairment assessed by Dr. Yu. Id.

## 2.    Relevant Law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31).

Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id. Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, the weight given a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. § 404.1527(c).

### 3.   Analysis

Plaintiff contends that the ALJ did not provide "specific and legitimate" reasons for rejecting the postural, agility, and environmental limitations set forth in Dr. Yu's October 5, 2013 Medical Source Statement. JS at 6.[1] The Court disagrees. The ALJ reasonably determined that some of the postural, agility, and environmental limitations set forth in the October narrative report and Medical Source Statement were contradictory, and he reasonably determined that the narrative report was more consistent with Dr. Yu's clinical findings as well as the record as a whole. AR 29-30. This is a specific and legitimate reason to reject a portion of the Medical Source Statement. See Thomas, 278 F.3d at 957-58; see also Korenica v. Astrue, 346 F. App'x 141,

---

[1] Plaintiff also argues that "[t]he mere fact of a discrepancy between Dr. Yu's second report and the form appended to that report is not a clear and convincing reason for rejecting the form completed and signed by Dr. Yu following his second examination of Plaintiff." JS at 6. However, Dr. Yu's October 5, 2013 Medical Source Statement was contradicted by the internal medicine consultative examiner, who opined that Plaintiff "does not have any postural limitations or manipulative limitations." AR 492. Thus, the ALJ was required to provide only specific and legitimate reasons for discounting a portion of Dr. Yu's opinion. See Carmickle, 533 F.3d at 1164.

6

142 (9th Cir. 2009) (holding that ALJ gave specific and legitimate reason for crediting physician's narrative report over check-the-box medical source statement where "[t]he ALJ reasonably determined that the statements in the two documents were contradictory, and determined that [the physician's] narrative report was more consistent with his clinical findings and the findings of other medical sources").

Nor was the ALJ required to recontact Dr. Yu merely because his October narrative report and Medical Source Statement were inconsistent. See Korenica, 346 F. App'x at 142; Thomas, 278 F.3d at 958 (explaining that ALJ is required to recontact doctor "only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability"). Here the ALJ noted that in the October evaluation Dr. Yu reiterated the "same diagnoses" from the July 13, 2013 evaluation—which opined that Plaintiff could "frequently" perform postural activities and be exposed to environmental conditions. AR 30. Indeed, both narrative reports contained substantially similar clinical findings and observations. The only additional information Dr. Yu appears to have considered as part of his second evaluation was a March 30, 2009 CT scan of Plaintiff's cervical spine, AR 394-95, a March 25, 2009 EMG, AR 401-02, and a March 25, 2009 nerve-conduction test, AR 399-400. Dr. Yu observed that Plaintiff's CT scan "does note of cervical spondylosis," which he characterized as "mild."[2] AR 729. He also characterized Plaintiff's EMG and nerve-conduction tests as "normal."[3]

---

[2] A radiologist indicated that the March 30, 2009 CT scan showed "mild to moderate degenerative spondylosis of the cervical spine." AR 395. However, the radiologist also indicated that a digital scout radiograph taken on the same day showed "[m]ild degenerative spondylosis of the cervical spine as described." AR 396.

[3] A neurologist indicated that the March 25, 2009 nerve-conduction

7

Id. The ALJ appeared to concur with Dr. Yu's characterization of these medical records:

> [W]hile imaging studies show some abnormalities in the cervical spine, those findings do not substantially support the degree of impairment severity alleged by [Plaintiff]. In addition, electrodiagnostic studies and longitudinal clinical findings do not persuasively show any chronic and significant neurological deficits.

AR 28. Thus, the ALJ appropriately resolved the inconsistency in Dr. Yu's reports and concluded that the additional medical records Dr. Yu considered did not support postural, agility, and environmental limitations beyond those set forth in his initial evaluation. See AR 30; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ is "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports). Where, as here, the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ also determined that Dr. Yu "did not assess an impairment . . .

---

study of Plaintiff's bilateral upper extremities was "within normal limits." AR 400. Another nerve test performed on the same day showed that Plaintiff's C5, C6, C7, and C8 nerve roots were "within normal limits." AR 398. Plaintiff's EMG was normal except for some "evidence for mildly increased insertional activity and motor unit polyphasicity in [his] cervical paraspinal muscles bilaterally," AR 401, indicating paraspinal muscle spasms, AR 402. Plaintiff's medical records reflect that he did experience muscle spasms after a work injury in August 2008. See AR 369, 372, 374, 383-84, 386. However, he does not appear to have experienced muscle spasms after 2009, other than briefly in July and August 2013, in connection with a tension headache. See AR 626-36, 661, 667-72, 675-80. During the October 5, 2013 examination, Dr. Yu did not find any spasm of Plaintiff's cervical or lumbar spine. AR 730-31.

reasonably relate[d]" to the other environmental limitations set forth in the October Medical Source Statement. AR 29. Dr. Yu checked boxes indicating that Plaintiff could "occasionally" tolerate exposure to environmental limitations, but did not fill in the section of the form that asked him to "[i]dentify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.) which support [his] assessment or any limitations and why the findings support the assessment." AR 738; see Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." ); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions").

While Plaintiff counters that his left-eye vision impairment supports a limitation to occasional exposure to moving mechanical parts, JS at 6, the ALJ accurately found that Plaintiff "demonstrated good visual acuity with each eye with correction," AR 21. Moreover, Plaintiff's visual acuity with glasses had improved since Dr. Yu's initial examination—during which Dr. Yu opined that Plaintiff could tolerate frequent exposure to moving parts—to 20/25 with each eye. AR 21, 613, 622, 730. Plaintiff also contends that his allergies and rhinitis support more limited exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, and extreme temperatures. JS at 6. The ALJ acknowledged that Plaintiff suffered from allergic rhinitis, but noted that it was caused by pollen rather than these other irritants. AR 30. The ALJ also noted that allergic rhinitis is "controllable with medication(s)." AR 28. Finally, Plaintiff argues that "[a] depressive disorder would effect [sic] an individual's attentiveness to hazards." JS at 6. However, as discussed more fully below in

9

Section III.B.3, the ALJ properly found that Plaintiff did not have any work-related mental limitations.

Accordingly, the ALJ acted in accordance with his responsibility to determine the credibility of medical evidence, and he gave specific and legitimate reasons for discounting a portion of Dr. Yu's October Medical Source Statement. See Thomas, 278 F.3d at 958. Therefore, remand is not warranted on this basis.

**B.    The ALJ Was Not Required to Include Mental Limitations in the RFC or His Hypotheticals to the VE**

    **1.    Background**

At step two of the sequential evaluation process, the ALJ found that Plaintiff's depressive order (as of May 2012) and anxiety disorder (as of April 2013) were "severe" in combination with Plaintiff's other impairments. AR 20-21. The ALJ also determined that Plaintiff's "depressive disorder and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and therefore are non-severe." AR 22. The ALJ rated Plaintiff's degree of limitation in activities of daily living, social functioning, and concentration, persistence, or pace as "mild" and found no episodes of decompensation. Id. The ALJ then reviewed Plaintiff's treatment records, a Function Report and an Exertion Questionnaire completed by Plaintiff, and the consultative examining psychologist's evaluation, AR 22-24, and determined that "the objective medical evidence does not substantially support any severe mental impairment or severe combination of mental impairments," AR 24. The ALJ further noted that Plaintiff's "activities of daily living appear to be limited primarily due to physical issues rather than mental issues." Id.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals any of the

10

impairments in the Listings of Impairments set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1. AR 26.

At step four, the ALJ considered additional evidence, including Plaintiff's testimony and the opinions of treating, examining, and nonexamining sources, AR 27-30, and found Plaintiff to be mentally "unlimited," AR 31. In so doing, the ALJ reiterated his finding that Plaintiff's "mental impairments, either singly or in combination, are non-severe" and also found that "the objective medical evidence does not substantially support any specific work limitations." Id. Accordingly, the ALJ did not include any mental limitations in Plaintiff's RFC. See AR 26. Nor did he include any mental limitations in his hypothetical questions to the VE. See AR 82-84.

## 2.     Relevant Law

A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record and "explain in [his or her] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources." § 404.1527(e)(2)(ii). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC determination because "ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

An ALJ may rely on a VE's "expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." § 404.1560(b)(2). A hypothetical posed to the VE must set out all of the claimant's limitations and restrictions. See Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (as amended); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). However, the ALJ's hypothetical question to the VE need not include limitations not supported by substantial evidence in the record. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001). Thus, "[t]he limitation of evidence in a hypothetical question is objectionable 'only if the assumed facts could not be supported by the record.'" Magallanes v. Bowen, 881 F.2d 747, 757 (9th Cir. 1989) (quoting Sample v. Schweiker, 694 F.2d 639, 644 (9th Cir. 1982)).

### 3.    Analysis

Plaintiff contends that the ALJ erred in failing to include the mild mental limitations he found at step two in the RFC assessment and hypothetical to the VE. JS at 12-15. This argument conflates the step two and three analysis with the separate and distinct RFC assessment at steps four and five. See Watkins v. Comm'r Soc. Sec. Admin., No. 15-01539, 2016 WL 4445467, at *3 (D. Or. Aug. 22, 2016) (citing §§ 404.1520a(b)(1), 404.1546(c)). As the ALJ noted in his decision,

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders

1  listings . . . . Therefore, the following residual functional capacity

2  assessment reflects the degree of limitation I have found in the

3  "paragraph B" mental functional analysis.

4  AR 24-25; see SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (summarizing

5  the psychiatric review technique); Rayford v. Astrue, No. 11-02027, 2012 WL

6  3839526, at *9 (C.D. Cal. Sept. 5, 2012) ("The fact that an impairment is

7  found to be severe at step two of the sequential process does not necessarily

8  translate to work-related limitations in the RFC at step four or five of the

9  sequential process."); see also Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir.

10 2007) ("The step two and step five determinations require different levels of

11 severity of limitations such that the satisfaction of the requirements at step two

12 does not automatically lead to the conclusion that the claimant has satisfied

13 the requirements at step five."). Thus, when formulating the RFC, the ALJ

14 must consider the step two and three limitations, along with all of the other

15 relevant evidence in the case record. See Israel v. Astrue, 494 F. App'x 794,

16 796 (9th Cir. 2012). That is precisely what the ALJ did in this case.

17      Plaintiff's reliance on Hutton v. Astrue, 491 F. App'x 850 (9th Cir.

18 2012), is misplaced. In Hutton, the ALJ determined at step two that the

19 claimant's PTSD caused mild limitations in concentration, persistence or pace,

20 but was "nonsevere." Id. at 850. However, at step four, the ALJ "excluded [the

21 claimant's] PTSD from consideration" on the ground that his lack of

22 credibility rendered "his PTSD claims . . . in 'great doubt.'" Id. The Ninth

23 Circuit held that the ALJ erred by failing to include the claimant's mild

24 limitations in the RFC assessment "regardless of whether the ALJ doubted that

25 they were caused by [the claimant's] ever-shifting military history." Id. at 851.

26      By contrast, the ALJ here did not disregard his prior findings regarding

27 Plaintiff's mental limitations. Rather, the ALJ thoroughly considered the

28 medical evidence related to Plaintiff's mental impairments at step four before

13

1    determining that it did not support the inclusion of mental limitations in the

2    RFC. As the ALJ summarized, Plaintiff first reported "the symptoms of a

3    major depressive episode" to his primary care doctors in May 2012. See AR 23

4    (citing AR 572). Plaintiff was prescribed psychotropic medication and, other

5    than when his mother was very ill in August 2012, he reported improvement in

6    his symptoms. AR 23 (citing AR 560, 564, 568, 575), 28. Plaintiff also testified

7    at the first hearing that his medication was helpful for his depression and

8    anxiety. AR 28, 58-59.[4] Plaintiff began seeing a therapist at a mental-health-

9    services agency in April 2013, reported doing well with therapy, and showed

10   no unusual anxiety or evidence of depression. AR 23-24 (citing AR 664, 676,

11   682, 684-85, 688-89, 752-77, 780, 785-86), 28. In July 2013, Plaintiff reported

12   to the consultative examining psychologist, Dr. Amber Ruddock, that he

13   socialized with friends and family on a regular basis, had a driver's license and

14   was able to drive, and handled his family's finances without difficulty. AR 23

15   (citing AR 642-43). The ALJ also noted that Dr. Ruddock opined that Plaintiff

16   "has no [mental] limitations or only mild (slight) limitations." Id. (citing AR

17   637-39, 644-45).[5]

18        Importantly, the ALJ expressly found that "the objective medical

19   evidence does not substantially support any specific [mental] work

20   limitations." AR 31. As the Commissioner notes, "Plaintiff does not cite to

21   any medical opinion evidence concluding that [he] had a work-related mental

22   limitation" nor does he "identify exactly what mental limitations the ALJ

23   should have incorporated into his RFC." JS at 13-14. Because the ALJ's

24        [4] Plaintiff's attorney chose not to take additional testimony from Plaintiff

25   at the second hearing. AR 81.

26        [5] Dr. Ruddock's Medical Source Statement states that a "mild"

27   limitation means that "[t]here is a slight limitation in this area, but the
     individual can generally function well." AR 637.

28

finding at step four that Plaintiff was mentally "unlimited" was supported by substantial evidence, the ALJ was not obligated to include any mental limitations in the RFC assessment or his hypotheticals to the VE. See Thomas, 278 F.3d at 959 (holding that ALJ need not include limitations that are not supported by objective medical evidence in hypothetical questions to VE); see, e.g., Rayford, 2012 WL 3839526 at *9 (holding that ALJ did not err in failing to include mental limitations in hypothetical to VE despite finding claimant's depressive disorder was severe impairment at step two because ALJ found that claimant "did not have any work-related mental limitations" at step four); Sisco v. Colvin, No. 13-01817, 2014 WL 2859187, at *2, *7-8 (N.D. Cal. June 20, 2014) (finding that ALJ was not required to include mental limitations in hypotheticals to VE where ALJ determined that claimant's mental impairments were "generally mild in nature" and imposed "no significant functional limitations"); Medlock v. Colvin, No. 15-9609, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) (finding that ALJ's decision not to include mental limitations in hypotheticals to VE was not legal error where "substantial evidence indicated [claimant] only suffered from 'mild impairment,' which caused only 'minimal limitation in her ability to perform basic mental work activities'"). Accordingly, the ALJ did not err in presenting hypothetical questions to the VE and relying on the VE's testimony. Remand is therefore not warranted on this basis.

**C.    The ALJ Did Not Err in Discounting Dr. Geyber's Opinion**

Plaintiff was evaluated by Dr. Lana Geyber on April 9 and May 7, 2009. AR 498. In a written report dated May 7, 2009, Dr. Geyber opined that Plaintiff should be "precluded from exposure to undue emotional stress and very heavy work." AR 504. The ALJ gave "less weight" to Dr. Geyber's opinion on the ground that "[t]he doctor based her opinion on [Plaintiff's] hypertension," but the ALJ found "no evidence that [Plaintiff's] hypertension

15

is not controlled adequately with medications and/or diet." AR 30. Plaintiff contends that "[s]uch reasoning does not constitute a legitimate reason for rejecting Dr. Geyber's opinion" because "Dr. Geyber herself noted Plaintiff's hypertension was 'under control' at the time of her examinations." JS at 15 (citing AR 502).

Contrary to Plaintiff's assertion, Dr. Geyber did not find that Plaintiff's hypertension was under control. Rather, she noted that Plaintiff reported "that his blood pressure is under control and he is taking his medications regularly." AR 502. Plaintiff also reported to Dr. Geyber that he was first diagnosed with hypertension in November 2008 by his private physician, Dr. Tu H. Duong, who prescribed medication that controlled his symptoms "[i]nitially." AR 501. When Plaintiff saw Dr. Igor Boyarsky on March 12, 2009, Plaintiff was informed "that his blood pressure was high" and referred to Dr. Geyber for consultation. AR 501; see AR 376-90. When Plaintiff first saw Dr. Geyber, on April 9, 2009, she diagnosed him with hypertension and prescribed a blood-pressure monitor as well as medication to lower his blood pressure. AR 498. In her May 7, 2009 report, Dr. Geyber noted that Plaintiff "had controlled blood pressure on medications," AR 503, but it is unclear whether this statement refers to the medication she had prescribed in the preceding month or the medication prescribed by Dr. Duong. In any event, Dr. Geyber also opined that Plaintiff "requires a lifetime medical care for hypertension with medications" and recommended that he "see a physician for follow up for this problem." AR 504. Thus, Dr. Geyber's report suggests that Plaintiff's hypertension was not under control for any significant period of time between Dr. Duong's initial diagnosis and Dr. Geyber's final evaluation.

By contrast, the ALJ found that treatment notes from September 2009 to December 2013 showed that Plaintiff's hypertension was adequately controlled with medication and diet. See AR 21-22 (citing AR 415-87, 555-75, 586-608,

673-93, 778-87). Plaintiff does not dispute this finding. Therefore, the ALJ's determination that Dr. Geyber did not take into account that Plaintiff's hypertension was "controlled adequately" was a specific and legitimate reason for giving little weight to her contradicted opinion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that ALJ properly refused to fully credit treating physician's opinion where the functional limitations were undermined by improvement in the claimant's condition and a conservative course of treatment); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). Remand is not warranted on this basis.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: December 01, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge